THE BOARD OF SUPERVISORS OF JACKSON COUNTY

*v.*

SAMUEL T. BRUSH *et al.*

1. MUNICIPAL SUBSCRIPTION AND BONDS — *who must determine conditions upon which bonds are voted.* If the people of a county vote a subscription in aid of a railway company, to be paid in bonds of the county upon certain conditions precedent, the county authorities can not delegate power to others to determine when the conditions are performed, but must determine that fact themselves, as the authorized agents of the people. This is an official trust, which can not be delegated.

2. If the issue of county bonds in aid of a railway company is duly authorized by a vote of the people, the bonds to be delivered upon certain conditions, the county board has no lawful power to issue the same in blank as to date, and place them in the hands of trustees, to be dated and delivered when the conditions are performed. They should not be issued until performance of the conditions.

3. SAME—*when disposition of may be enjoined.* If county bonds are issued and placed in the hands of individuals, for a railway company,

Statement of the case.

before performance of the conditions upon which they were voted, they being improperly in such persons' hands, any disposition of them, except delivering them back to the county authorities, may be enjoined.

4. SAME—*burden of proof where subscription is made after the adoption of the new constitution.* Where a municipal subscription to a railway company, made subsequent to the adoption of the present constitution, is sought to be upheld, the burden of proof rests upon the company to show affirmatively that the same had been authorized under existing laws by a vote of the people of the municipality, prior to the adoption of the present constitution.

5. SAME—*under the act of* 1849, *limited.* Under the general railroad law of 1849, municipal subscriptions to the capital stock of a railroad company could not exceed $100,000.

6. SAME—*when a majority of all legal voters required.* Under the railroad law of 1849, no authority was given to issue bonds in payment of subscriptions to railroad companies, unless voted by a majority of the legal voters of the counties or cities making such subscriptions, taking as a standard the number of votes cast at the next preceding general election for county officers.

7. On a bill to enjoin the delivery of county bonds to a railway company, issued under a subscription made since the adoption of the present constitution, where it is alleged that proper notice of the election was not given, and that a majority of the voters of the municipality, taking as a standard the number of votes cast at the last preceding election for county officers, did not vote for the subscription, the burden of proof rests upon the company to show these things took place.

APPEAL from the Circuit Court of Jackson county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

This was a bill in chancery, filed by the board of supervisors of Jackson county, against Samuel T. Brush, administrator of the estate of John M. Hanson, deceased, Hugh Crawford, John Ford, William Bradley, Thomas T. Robinson, A. C. Davis, James W. Hall, and the Cairo and St. Louis Railroad Company, to enjoin the delivery of certain county bonds. The opinion of the court states the facts of the case.

Mr. THOMAS G. ALLEN, for the appellant.

Mr. L. P. BUTLER, and Mr. WM. J. ALLEN, for the appellees.

Mr. Justice Scott delivered the opinion of the Court:

This bill was for an injunction and decree that two hundred undated bonds, each for the sum of $1000, prepared under an order of the county court of Jackson county, and delivered to John M. Hanson, Hugh Crawford and John Ford, in trust for the Cairo and St. Louis Railroad Company, be surrendered up to the corporate authorities of the county, and that the orders of the county court of that county made on the 10th day of August, 1871, authorizing and directing that two subscriptions, each for the sum of $100,000, be made to the capital stock of the Cairo and St. Louis Railroad Company, be declared null and void, as having been made without authority of law. One hundred of these bonds, it is claimed, were issued under a subscription voted at an election held on the 9th day of June, 1868, and the other one hundred under a subscription voted on the 24th day of July. 1869. The court, on the final hearing, dissolved the temporary injunction, and dismissed the bill as to the first series of bonds. but made the injunction perpetual and decreed relief as to the second series. Both parties appealed to this court, and assign errors.

On the 10th day of August, 1871, two orders were entered of record in the county court of Jackson county, in the first of which it is recited, in substance, that on the 9th day of June, 1868, an election was held in the several precincts of the county of Jackson, at the usual places of holding elections, on a proposition, submitted to the voters of the county, for or against a subscription of $100,000 to the capital stock of the Cairo and St. Louis Railroad Company, and that at such election a majority of the votes cast was in favor of the subscription, upon the conditions named in the proposition submitted, viz: the bonds to be issued in payment of the stock ; to run twenty years, at the option of the county ; to bear interest at the rate of eight per cent per annum, and no part of them to be delivered to the railroad company until the

railroad should be completed to Murphysboro: then, bonds equal to one-half of the subscription to be executed and delivered to the company, and the other half of the bonds to be issued when the railroad should be completed from Cairo to St. Louis, and the cars running thereon. The bonds were to bear no interest until delivered. Thereupon the court ordered that a subscription of $100,000 to the capital stock of the Cairo and St. Louis Railroad Company be, and the same was, by that order, made, upon the conditions specified in the proposition voted upon; and it was further ordered, for the purpose of paying such subscription, there shall be issued bonds, in the sum of $1000 each, to the aggregate amount of $100,000, payable in twenty years, at the option of the county, with interest at eight per cent per annum, to bear date on the day of the delivery to the company, but no interest to commence to run until the date of delivery. The clerk of the county court was required to have the bonds prepared, omitting the date, and when so prepared, he was directed to deliver them to John M. Hanson, Hugh Crawford, and John Ford, who were, by the court, appointed trustees on behalf of the county, to receive them. Authority was given to the trustees, by the order of the county court, to date and deliver the bonds to the railroad company after the same had been signed by the members of the court, upon compliance with the conditions contained in the proposition voted upon: that is to say, the trustees were directed to deliver bonds to the amount of $50,000 to the company when the railroad should be completed to Murphysboro, and bonds for the remaining $50,000 when the railroad should be completed from Cairo to St. Louis, and the cars running thereon, but not otherwise; and, simultaneously therewith, to receive from the railroad company its certificate or certificates of paid up stock to an amount equal to the sum of the bonds so delivered.

The second order recited that an additional subscription of $100,000 to the capital stock of the Cairo and St. Louis Rail-

road Company was voted at an election held in the several precincts of the county, on the 24th day of July, 1869, upon precisely the same conditions as stated in the first proposition submitted. A like order was made that the clerk of the county court cause the bonds to be prepared, and, when signed in blank, to be delivered to the trustees named in the previous order, to be by them received, and to be delivered to the railroad company upon compliance with the conditions expressed in the order.

Accordingly, two series of bonds, with coupons attached, of the denomination of $1000 each, numbered from one to one hundred, inclusive, were prepared, but without date, and after the same had been signed by the members of the county court, they were delivered to the trustees named, who were authorized, by the order of the county court, to date and deliver them when it should appear the railroad company had complied with all the conditions upon which the subscriptions had been voted.

At the November election, 1871, the question having been submitted, it was voted to adopt township organization in Jackson county, and the board of supervisors since elected have succeeded the old county court in the management of the affairs of the county. Hence, the board of supervisors appear as complainant in this cause.

Without reference to the merits of this controversy, it is quite clear the undated bonds in the hands of the parties named as trustees should be surrendered to the corporate authorities of the county, and to that extent the relief asked as to both series of bonds should have been granted. No authority can be found for placing them in the hands of trustees with directions, when they should deem the conditions on which the subscriptions had been voted complied with, to deliver them to the railroad company, in payment of stock to be issued to the county. Conceding the subscriptions had been authorized by a vote of the people of the county, nevertheless it was upon express conditions annexed,

and no liability rested upon the county to issue bonds until those conditions had been fully performed. Who is to determine when these bonds shall be issued and delivered to the railroad company, if at all? Clearly, it must be the regularly constituted officers of the county, elected by the people, and intrusted with the management of all financial matters of the county and all municipal affairs. This is an official trust, which neither the county court nor its successor, the board of supervisors, could delegate to strangers owing no obligation or allegiance to the county. The reasons for this proposition are obvious. In the first place, the people had never consented that any one, other than the proper officers of the county, should judge of the performance of the conditions precedent on which the subscriptions had been voted; and, in the second place, should a controversy arise, it is all important the bonds should be in the hands of these officers until the matter could be judicially determined.

There are grave reasons to be found in the facts of this case why this should be so. Notwithstanding the elections may have been regularly conducted under enabling laws, it may still be true, as charged in the bill, the subscriptions were voted on the implied understanding the railroad to be constructed should be of the usual and customary gauge of other roads. The proposition submitted was silent on this subject. The road now constructed by the company is what is called "narrow gauge." Can it be maintained the trustees appointed by the county court may determine conclusively whether this is the enterprise in which the people voted to take stock? Without expressing an opinion on this question, we may say it is an important one, and one which the people of the county may choose to have judicially settled, before bonds for stock shall be issued in pursuance of any elections previously held. As the matter now stands, it is within the power of the trustees, under whose control these bonds are, to decide that a "narrow gauge" road is a full compliance with the undertaking of the company, that it has performed all precedent

conditions to be performed, and that they will date and deliver the bonds and coupons to the company.

The folly of the action of the county court is apparent in the fact that, one of the trustees having since died, the decree finds these bonds are "now in the possession of Samuel T. Brush, administrator of John M. Hanson." What business has this administrator with the management and control of this large amount of bonds, in which the people of the county are so largely interested? Neither he nor the surviving trustees have ever. by any law, been made financial agents of the county for the transaction of its business.

Should the trustees abuse the confidence reposed in them, by improperly dating and delivering the bonds, the county might suffer irreparable injury. They are in no sense county officers, and owe no obligation to it, as such, for the performance of their trust. They have not been intrusted by any.vote of the people whose interests are to be affected, nor by any general law of the State, with the extraordinary powers with which the county court has attempted to clothe them. Functions to be exercised by county officials can not, without special authority given by law, be delegated to strangers with power to act in their stead.

Our conclusion is, these bonds and coupons are improperly in the custody of the parties named as trustees, and that they should be enjoined from making any disposition of them, except to deliver them back to the legally constituted authorities of the county, who alone have power, under the law, if it shall ever be determined to do so, to date and issue the bonds to the railroad company. It is a personal trust reposed in the county officers, and there is no authority of law for delegating that trust to others.

Whether the subscriptions proposed to be made for stock in the Cairo and St. Louis Railroad Company were authorized, under existing laws, by a vote of the people of the county, prior to the adoption of the constitution of 1870, is a question of much more difficulty. The constitutional inhibi-

tion is general, and bars all subscriptions by municipal corporations to the capital stock of any railroad or private corporation. No subscriptions had been made on the books of the company, or elsewhere, by the county, to the capital stock of the Cairo and St. Louis Railroad Company, nor had any been authorized to be made, until the 10th day of August, 1871, when, so far as an order of court could accomplish it, the county court assumed to make the subscriptions which, it is alleged, had previously been voted. Unless the proposed subscriptions can be shown to be within the saving clause of that article of the constitution that forbids all municipal subscriptions to the capital stock of a railroad or private corporation, they are clearly invalid. In the view we feel warranted in taking of the law of this branch of the case, the burden of proof rests upon the railroad company to show affirmatively the subscriptions proposed to be made to its capital stock had been authorized under existing laws, by a vote of the people of the municipality to be affected, prior to the adoption of the present constitution.

The Cairo and St. Louis Railroad Company was organized under a special act of the General Assembly, in force February 16, 1865. Its original charter conferred no authority on the people of the counties or cities through which it was proposed to construct the railroad, to make subscriptions or donations to its capital stock. The election on the 9th day of June, 1868, on the proposition submitted to make a subscription to its capital stock, was held under the general railroad law of the State as contained in the act of 1849. Subscriptions authorized by the provisions of that act could, in no case, exceed $100,000 in any company. Municipal subscriptions to the capital stock of railroad companies were expressly forbidden, nor was any authority given to issue bonds in payment of such subscriptions, unless voted by a majority of the voters of the counties or cities making such subscriptions, taking as a standard the number of votes thrown at the last general

election for county officers previous to the vote on the proposition submitted.

It is charged, negatively at least, the notice required by the statute was not given for holding the election, and that a majority of the voters of the county of Jackson, taking as a standard the number of votes thrown at the last general election for county officers, did not vote for the subscription in payment of which the first series of bonds was issued. The answer of defendants, however, affirms the requisite notice was given, and that a majority of all the voters of the county, tested by the standard indicated, did vote for the subscriptions, but the record is barren of evidence, so far as we can discover, to sustain either allegation. Assuming, as we do, the burden of proof was upon the railroad company to show affirmatively the subscription was authorized under existing laws by a vote of the people of the municipality attempting to make it, prior to the adoption of the constitution, the want of it would be fatal to the first series of bonds. That proof may hereafter be made, in some appropriate action, and we forbear to remark further upon this branch of the case at this time, but leave the parties at liberty to make such proof as they can.

Inasmuch as the other series of bonds, alleged to have been voted at an election held on the 24th day of July, 1869, will also be placed under the control of the county authorities, the questions raised as to their validity can be better determined if the railroad company shall ever sue out a writ of *mandamus* to compel the county to date and deliver the bonds.

The whole decree of the circuit court will be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Decree reversed.*