THE TOWN OF PRAIRIE *et al.*

*v.*

J. WILLIAM LLOYD *et al.*

*Filed at Springfield November 26, 1880—Rehearing denied January Term, 1881.*

1. MUNICIPAL SUBSCRIPTION—*whether authorized to be made in money or in bonds.* Where the eighth section of the charter of a railway company gave power to municipalities to make subscriptions to such company, issue bonds, and levy the requisite tax to pay them, upon a vote authorizing the same, and the ninth section provided the mode of calling an election to "determine whether such subscription should be made and such tax levied," and the tenth section provided that, upon an affirmative vote, the corporate authorities should "levy such tax, and subscribe to such corporation the amount thereof," as voted, and the eleventh section provided that if any such municipality should subscribe under the provisions of the charter, and should issue their bonds, they should be in full payment of its subscription: *Held,* that the several sections, when construed together, only provided for subscriptions payable in bonds to be ultimately discharged by the levy of a tax for that purpose, and not for subscriptions to be paid in money, in the first instance, previously raised by taxation.

2. SAME—*of the application for an election—whether question of a tax levy must be included.* Where a railway charter provided for calling an election on a petition of twenty-five legal voters, to determine whether a subscription should be made to the railway company, and a tax levied, and the notice to be given of such election, and in a subsequent section empowered the several

towns, etc., through or near which the road ·should be located, to "make donations and to issue .bonds for the same in the manner" therein before provided for, to such railroad for the construction of the same, it was *held,* that whatever might be the rule in respect to subscriptions, it was clear that, so far as donations were concerned, the failure to submit a formal proposition to the electors for authorizing the levy of a tax, would not render the bonds issued under the election void, and that the people,· in voting the donation of bonds, impliedly voted for the levy of the requisite tax to pay them.

3. SAME—*of the notice of the election.* Where a law authorizing municipal subscriptions by towns in counties under township organization, required the elections therefor to be held and conducted in all respects, and returns thereof made, "as in case of annual elections," it was held that the term "annual elections" did not mean town meetings, but was used in the sense of general elections, and therefore that notice of the election, under the general election law; was sufficient.

4. SAME—*evidence to show holding of election and its result.* Where the application for an election in a town to vote upon the question of a donation to a railroad company, and the notice of the election by the town clerk, are shown in writing, and the return of the election is lost or can not be produced, the holding of the election and the returns showing the result may be shown by parol evidence to sustain the validity of bonds issued under such election.

5. SAME—*clear proof required to show a majority did not vote for the subscription, after registration.* Where a majority of those voting at an election for the issue of bonds in aid of a railroad vote in favor of the same, whether as a subscription or donation, for the purpose of registration it will be presumed that such majority so voting was a majority of all the legal voters living in the municipality at the time of the election. And where, in such case, the authorities acting upon such presumption have admitted the bonds to registration, and the municipality issuing them has treated them as properly registered, by paying taxes levied by the auditor for the payment of accruing interest, and the bonds so registered have passed into the hands of innocent holders, nothing but the clearest and most satisfactory proof will authorize a court to enjoin the collection of a tax levied by the auditor on account of such bonds, on the alleged ground that the majority voting for such subscription or donation did not constitute a majority of the legal voters.

6. MUNICIPAL BONDS—*burden of proof as to their validity.* When municipal bonds have been issued in aid of a railway corporation, or as a donation thereto, since the constitution of 1870 went into effect, the burden of showing they were issued in compliance with a vote of the people of the municipality, in pursuance of some law authorizing the same, rests upon those affirming their validity. Such bonds are *prima facie* invalid.

7. SAME—*corporate authorities of a town to issue bonds.* Where a railroad charter provides that if a majority voting at an election on a proposition that

a town subscribe or donate a sum of money to the company to aid in the construction of its road, the town, by its proper corporate authority, shall subscribe and issue its bonds for the amount voted, the bonds will be properly executed by its supervisor and town clerk, though the expression "*corporate authorities*" does not ordinarily, in its application to townships, signify the supervisor and town clerk.

8. SAME—*right to registration.* Before railroad aid bonds can be properly registered under the act of April 16, 1869, it must appear that they were issued in pursuance of a vote of a majority of the legal voters in the municipality issuing them. But when once registered, it will be presumed they were rightfully registered, and the burden of establishing the contrary rests upon the party affirming it.

9. SAME—*delivery of bonds to an unauthorized party.* Where a town has ample authority for issuing its bonds to a certain railroad company as a donation or subscription, and the bonds are executed in proper form and made payable to the proper company, but are delivered to the secretary of a new company, and there is nothing pertaining to them, or which could have been ascertained from the record, indicating their delivery to one not entitled to receive them, the bonds can not be held invalid by reason of such alleged improper delivery after they have passed into the hands of innocent holders.

APPEAL from the Circuit Court of Shelby county; the Hon. W. R. WELCH, Judge, presiding.

This is a bill in chancery filed by complainants, against the defendants, in the Shelby county circuit court, on the 29th day of July, 1876, for the purpose of enjoining a tax levied for the payment of the interest on certain railroad donation bonds, amounting in the aggregate to $40,000, issued by the town authorities of the town of Prairie, and registered in the office of the Auditor of Public Accounts, under the act of April 16, 1869.

The bill charges in substance, that "on the 3d day of October, 1869, there was filed, in the office of the clerk of said town of Prairie, a written application setting forth that twenty-five legal voters, in accordance with the provisions of sections 9 and 19 of an act entitled 'An act to incorporate the Bloomington and Ohio River Railroad Company,' did respectfully petition the clerk to call an election to determine the wishes of the legal voters in reference to said town

donating $40,000 in its bonds to aid in the construction of said railroad, the donation to be on the following conditions, viz: When the above named company shall have completed said railroad through said town, in accordance with the provisions of its charter, and its officers shall legally release said town from a donation of $40,000, already voted and pledged for the same purpose as this donation, then the township shall issue its bonds drawing ten per cent interest, which bonds shall be due and payable in the city of New York, within ten years from date, and be delivered to said railroad Company."

Upon receiving this petition by the town clerk, he made out a notice and filed the same in his office, setting forth the written application, and calling an election on the 10th day of December, 1869, to be held between the hours of 8 o'clock A. M. and 4 o'clock P. M., the ballots to have printed thereon, "For Donation," "Against Donation;" that the foregoing petition and notice is all the record or legal evidence of any kind on record in said township or on the files of the county clerk, showing that an election was held on the 10th day of December, 1869; that there was no legal notice of the holding of the election; that the notices were not posted for a period of thirty days; that there was no submission to the legal voters of a proposition to determine whether a donation should be made and a tax levied, specifying in such application the amount of such tax for the payment of such donation, and that by reason thereof, everything done under and in pursuance thereof is null and void, said charter providing that "no subscription or donation shall be made, and no tax shall be levied, until the same shall be voted for as hereinafter provided;" that complainants are informed that some kind of an informal and illegal election was attempted to be held on the tenth day of December, 1869, for the purpose of voting for donation to said railroad company, but complainants expressly charge that there is no record in the town clerk's office of the holding of such election, and that there

never was any record, and that the only evidence thereof rests in parol; that there was not submitted to, nor voted upon, at said pretended election, the question as to whether a tax should be levied in accordance with the provisions of said charter, for the purpose of paying the amount so donated; that the election was not held and conducted as required by law; that there was not a majority of the legal voters of said township that voted at said election, and that the election and all the proceedings had under and in pursuance thereof, were void, and did not empower the supervisor and town clerk to make said donation and issue the bonds of said town; that there were more than 200 legal voters residing in said town on the 10th day of December, 1869, who were legally entitled to vote in said township, and that there were only cast or voted at said election 90 votes—less than a majority— and that by reason thereof, the town bonds as set forth were not legally entitled to registration, and that the auditor has no authority to direct a tax for the payment of the bonds and coupons so attempted to be issued, and that the right or authority, in the absence of a vote of said township, is not vested in any board, officer or officers known to the law; that the supervisor and town clerk, notwithstanding the premises, issued forty bonds numbered respectively one to forty, and each for the sum of $1000, and in the words and figures following, to-wit:

"No. —.                                              $1000.

"United States of America, State of Illinois.  Ten per cent bond.  Town of Prairie.

"The town of Prairie, in the county of Shelby, State of Illinois, acknowledges itself indebted in the sum of $1000, lawful money of the United States of America, which sum the said town of Prairie promises to pay to the Bloomington and Ohio River Railroad Company, or to the bearer hereof, at the office of the Farmers' Loan and Trust Company, in the city of New York, ten years from the first day of February, A. D. 1874, with interest from the first day of Feb-

ruary, A. D. 1874, at the rate of ten per cent per annum, payable annually at the office of said Farmers' Loan and Trust Company upon the presentation and delivery of the several coupons hereto annexed as they respectively become due, and to the payment of said principal and interest in the manner aforesaid, the faith and revenue of said town is hereby irrevocably pledged.

"This bond is one of a series issued in aid of the construction of the Bloomington and Ohio River Railroad, amounting to $40,000, and consisting of forty bonds, numbered from one to forty inclusive, each of which is for $1000, and all of which are of like tenor and date, and are issued by said town of Prairie by virtue of a vote of a majority of the voters of said town of Prairie, voting at an election held in said town of Prairie on the 10th day of December, 1869, which election was authorized and was conducted according to the provisions of an act of the General Assembly of the State of Illinois, approved March 10, 1869, entitled 'An act to incorporate the Bloomington and Ohio River Railroad Company.'

"In witness whereof the supervisor and town clerk of said town have hereto set their hands and seals this 14th day of January, A. D. 1874.

John W. Homrighouse,
*Supervisor* [Seal.]

E. Deal.
*Town Clerk* [Seal.]"

That afterwards, on the 15th day of January, 1874, these bonds were registered in the office of the auditor; that before the making of said pretended donation, so far as it empowered or authorized said town to make donation, the charter became and was repealed by virtue of the provisions contained in the constitution of 1870, which, among other things, provides that "no county, city, township or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation or loan its credit in

aid of such corporation, *provided,* however, that the adoption
of this article shall not be construed as affecting the right
of such municipality to make such subscription, where the
same has been authorized under existing laws by a vote of
the people of such municipality, prior to such adoption;" that
the donation pretended to be made, and the bonds pretended
to be issued, were not made to the Bloomington and Ohio
River Railroad Company; that before the bonds were issued
the Bloomington and Ohio River Railroad Company had
ceased to exist as a corporation, or to have any officers or
agents; that there were filed in the office of the Secretary of
State what purported to be articles of consolidation between
the Bloomington and Ohio River Railroad Company and the
Fairbury, Pontiac and Northwestern Railroad Company,
under the name of the Chicago and Paducah Railroad Com-
pany, and that the bonds were, in fact, delivered to the
officers and agents of the Chicago and Paducah Railroad
Company; that the consolidation was and is illegal, and did
not clothe the Chicago and Paducah Railroad Company with
the franchises of the Bloomington and Ohio River Railroad
Company, the illegalities being these: 1st. That the meeting
at which the attempted consolidation was voted to take place,
was not duly notified as required by the eleventh section of
the constitution of 1870, which provides that "no railroad
corporation shall consolidate its stock, property or franchise
with any other railroad corporation owning a parallel or
competing line, and in no case shall any consolidation take
place except upon public *notice,* given at least *sixty days,*
to all stockholders in such manner as may be *provided* by law."
2d. Said pretended meeting being held on the 19th day of
March, 1872, and the law fixing and prescribing the form
and manner of notice not having gone into force or taken
effect until the first day of *March,* 1872, there being less than
sixty days between the taking effect of the law and the hold-
ing of said meeting. 3d. That said attempted consolidation
was by the board of directors, and not at a stockholders'

meeting. 4th. That the constituent companies as authorized by their respective charters were on direct parallel and competing lines, and that because thereof the attempted consolidation was fraudulent, illegal and void; that the Chicago and Paducah Railroad Company fraudulently received, negotiated and put in circulation said forty bonds with coupons for interest; that the parties receiving said bonds had notice of the premises aforesaid, and especially of the want of power and authority on the part of the supervisor and town clerk to issue and deliver said bonds to the Chicago and Paducah Railroad Company, the only authority said supervisor and town clerk had being of record and constructive notice to all persons dealing in said bonds; that complainants are the owners of certain real estate situate in said town, and that their respective titles to said real estate are clouded and incumbered by the issue and registration of said bonds; that the auditor, in the year 1875, certified a tax upon the taxable property of said town, amounting in the aggregate to $4000, with which to pay interest on said bonds, and the county clerk extended the same upon the tax books for the year 1875, and that said tax was collected by the town collector, and he paid the same over to the county treasurer, and the county treasurer has paid some portion of the same over to the State Treasurer, and that the same is wrongfully and illegally held by the State and county treasurers, and that the tax payers of said town paid said illegal tax under protest, and because thereof they are entitled to recover the same back; that the auditor is threatening and intending to issue another certificate to the county clerk of said county, and the county clerk is threatening to extend the same upon the tax books of said town; that the names and places of residence of the parties now holding said bonds and coupons are unknown to complainants, and can not be made parties defendant by name; that the tax payers of said town are numerous, amounting to several hundred, and that it is impracticable to make them all

parties complainant to this bill, and that this bill is brought in behalf of complainants and all the other tax payers.

By way of amendment to the bill, it is further charged " that the pretended election was held and conducted without registration, as required by the provisions of section one of an act, entitled 'An act to prevent fraud in elections for subscriptions to stock in or for donations in aid of any incorporations, or concerning any county seat,' approved March 10, 1869, and because thereof, said election was not legally conducted, as required by law, and the same, at the time of issuing said pretended bonds, conferred no right or authority to issue the same, and that said bonds are void."

And also " that said bonds were not issued nor authorized to be issued by the corporate authorities of the town of Prairie, but were issued and delivered by the supervisor and town clerk to the Chicago and Paducah Railroad Company."

The bill makes the auditor, treasurer, unknown owners and holders of the bonds, the county clerk and others, parties defendant, and prays an injunction to restrain the collection of the tax, and for general relief.

The defendants filed a general answer, denying the equities of the bill, and the cause was heard on bill, answers, replications and proofs at the October term, 1879, of the Shelby county circuit court, resulting in a decree dissolving the injunction which had theretofore been granted, and a dismissal of complainants' bill.   From that decree complainants have appealed to this court, and assigned various errors upon the record.

Messrs. Henry & Cook, for the appellants:

When municipalities exercise the functions given by statute, the power granted must not only be clearly conferred, but strictly pursued. *Harding* v. *Rock Island and St. Louis Railroad Co. et al.* 65 Ill. 92; *Jackson County* v. *Brush et al.* 77 id. 59.

When the mode of contracting is specially and plainly prescribed, that mode is exclusive and must be pursued, or

the contract will not bind the corporation.   Dillon on Mun. Corp. (1st ed.) 372–3; *Argenti* v. *San Francisco,* 16 Cal. 283; *Yottman* v. *San Francisco,* 20 id. 102.

As to the rule of strict construction in laws extending the powers of corporations, or increasing the burdens of taxation, or statutes in derogation of common rights of property, etc., see *Chestnutwood et al.* v. *Hood et al.* 68 Ill. 136, *The People ex rel.* v. *Hulburt,* 46 N. Y. 113, *The People* v. *Smith,* 45 id. 772, *Sharp* v. *Speir,* 4 Hill, 79, *Beaty* v. *Knowles,* 4 Pet. 152, *VanHorn's Lessee* v. *Dorrance,* 2 Dall. 316, *Doe ex dem. Lemon* v. *Shurm,* 1 Blackf. 336, and *Farrington* v. *Morgan,* 20 Wend. 207.

Where a township is authorized to hold an election and no mode is prescribed, it must be held in the same manner that township elections are required to be held.   *The People* v. *Dutcher,* 56 Ill. 147.

The notice required by law is jurisdictional.   *Williams* v. *Town of Roberts,* 88 Ill. 20; *Harding* v. *Rock Island and St. Louis Railroad Co.* 65 id. 92.

As to the notice required, of special town meetings, see Gross' Stat. (3d ed.) sec. 9 of Township Organization.

This question is fully settled by a series of decisions in our own Supreme Court, in which it is held that if the mode prescribed in the charter for carrying into effect the right to issue the bonds has not been complied with in all material matters, the bonds are void.   *The People* v. *Tazewell County,* 22 Ill. 147; *Fulton County* v. *The Mississippi and Wabash Co.* 21 id. 338; *Supervisor of Schuyler County* v. *The People,* 25 id. 181; *Clark* v. *The Supervisors of Hancock County,* 27 id. 305; *Marshall County* v. *Cook,* 38 id. 44.

As to the right to have the bonds registered, counsel cited *Dunnovan* v. *Green,* 57 Ill. 65, *Ramsey* v. *Hœger,* 76 id. 440, *Springfield and Illinois Southeastern Railroad Co.* v. *Cold Spring Township,* 72 id. 603, and *Town of Eagle* v. *Cone et al.* 84 id. 292.

In this class of cases the right to contract must be limited by the right to tax, and if, in the given case, no tax can lawfully be levied to pay the debt, the contract is void for want of authority to make it. The ratification of a contract which can only be fulfilled by a resort to taxation, depends on the power to levy the tax for that purpose. *Loan Association* v. *Topeka,* 20 Wall. 660; *Sharpless* v. *The Mayor, etc.* 21 Pa. St. 147; *Hanson* v. *Vernon,* 27 Ia. 28; *Allen* v. *The Inhabitants of Jay,* 60 Me. 127; *Whiting* v. *Fond du Lac Railroad Co. et al.* 25 Wis. 188.

Section 19 of the charter confers no power to submit the question of donation to a vote. The distinction between a subscription and a donation is maintained in the following cases: *Whiting* v. *Sheboygan, etc., Railroad Co.* 25 Wis. 186; *Curtis* v. *Whipple,* 24 id. 350; *Stewart* v. *Hubbard,* 21 Barb. 312; *Hanson* v. *Vernon,* 27 Ia. 28; *Town of Concord* v. *Savings Bank,* 2 Otto, 629.

There is no evidence of the holding of the election, and the result, except parol evidence. That which the law requires to be shown of record is only provable by the record, except in cases where the record is lost or destroyed. Cooley on Taxation, p. 247–8; *Taylor* v. *Henry,* 2 Pick. 402; *The People* v. *Zeyst,* 23 N. Y. 141; Starkie on Evidence, (3d Am. ed.) vol. 3, p. 995; Greenleaf on Evidence, (9th ed.) sec. 86, vol. 1, p. 124; *Cardigan* v. *Page,* 6 N. H. 191.

Parol evidence is not admissible to prove the transations of a school meeting, the only legal evidence being the record itself or an attested copy. *Moor* v. *Newfield,* 4 Greenlf. 44; *Doe* v. *McQuilkin,* 8 Blackf. 335; *Moyer* v. *White,* 29 Mich. 59; *Farrer* v. *Phesenden,* 39 N. H. 268.

Messrs. Thornton & Hamlin, and Messrs. Moulton, Chafee & Headen, for the appellees:

Under the proof showing the call of an election, and the posting of the notices required, the presumption of law is that the 90 persons who voted constituted a majority of voters.

*The People ex rel.* v. *Garner*, 47 Ill. 252; *Melvin* v. *Lisenby et al.* 72 id. 67; *St. Joseph Township* v. *Rogers*, 16 Wall. 664.

It is contended that the donation of bonds did not make a contract. . If a party, upon a naked promise, expends money or labor, etc., on the faith of the promise to pay, it will be enforced. 3 Parsons on Contracts, 359.

Donations to railway companies have been enforced by the courts. *Chicago, Danville and Vincennes Railroad Co. et al.* . v. *Smith*, 62 Ill. 270; *Chicago, Danville and Vincennes Railroad Co.* v. *Coyer*, 79 Ill. 373.

Although the bonds were delivered, as the proof shows, to the secretary of the consolidated road, the company to whom they were voted is making no complaint, and the town has no right to do so. The cases cited by appellants' counsel on this point have no application to this case.

The objection taken is based upon the supposition that the bonds, in the event of consolidation, after the vote, can not enure to the company formed by the consolidation. The consolidation did not release the donation. *Robertson* v. *City of Rockford, etc.*, 21 Ill. 451; *Nugent* v. *Supervisors of Putnam County*, 19 Wall. 241; *Town of East Lincoln* v. *Davenport*, 4 Otto, 801; *County of Scotland* v. *Thomas*, id. 683; *Edwards* v. *The People*, 88 Ill. 340; *Bish* v. *Johnson*, 21 Ind. 299; *Hanna* v. *Cincinnati Railroad Co.* 20 id. 30; *Schenectady, etc., Plank Road Co.* v. *Thatcher*, 1 Kern. 102.

If the people gave their consent to the issue of the bonds by a vote, that is sufficient. *The People ex rel.* v. *Salomon*, 51 Ill. 137; *Harwood* v. *St. Clair Drain. Co.* id. 135; *Dunnovan* v. *Green*, 57 id. 69.

The electors, acting through town meetings or elections, are the corporate authority. *Williams* v. *Town of Roberts*, 88 Ill. 11.

Town officers are corporate authorities. *Chicago, Danville and Vincennes Railroad Co.* v. *Smith*, 62 Ill. 268.

The law, coupled with the vote, constitutes the power. The manner of issuing, the steps preliminary to the issue

and after the vote, omissions after a regular vote, all are mere irregularities. *Ryan* v. *Lynch,* 68 Ill. 164; *Barr* v. *City of Carbondale,* 76 id. 469; *Chicago, Danville and Vincennes Railroad Co.* v. *Coyer,* 79 id. 378; *Melvin* v. *Lisenby,* 72 id. 63; *Maxcy* v. *Williamson County,* id. 209; *Chiniquy* v. *The People,* 78 Ill. 572.

As to the registration of the bonds, counsel cited *Dunnovan* v. *Green,* 57 Ill. 65; *Decker* v. *Hughes,* 68 id. 33.

The charter provided for a vote as at an annual or general election. *The People* v. *Dutcher,* 56 Ill. 147; *Town of Ottawa* v. *LaSalle County,* 11 id. 655.

Mr. Justice Mulkey delivered the opinion of the Court:

The various objections to the tax sought to be enjoined in this case may be grouped together under two general heads, namely, such as question the validity of the bonds themselves, and those which merely question the right of the auditor to levy the tax under the provisions of the act of April 16, 1869. The bonds in question having been issued after the present constitution went into effect, the burden of showing they were issued in compliance with a vote of the people of the town, had prior to the adoption of the present constitution, in pursuance of some law then providing therefor, rests upon those affirming their validity. *Jackson County* v. *Brush et al.* 77 Ill. 59; *The People ex rel.* v. *Jackson County,* 92 id. 441.

The bonds *prima facie* are invalid,—hence, without such proof, the tax in question would clearly appear to have been levied without authority of law, and should therefore be enjoined.

Keeping this in view, we will now proceed to consider such as we regard the most important objections to the validity of the tax in question, in the order above indicated.

The bonds in question were issued in pursuance of a vote of the people of the township at an election held in the township on the 10th day of December, 1869, under the pro-

visions of the charter of the Bloomington and Ohio River Railroad Company. Sections 8, 9, 10, 11 and 19 of the company's charter are the only ones that have any material bearing upon the matter in hand, and are as follows:

"Sec. 8. The several counties, cities, villages, incorporated towns, and the several townships in counties having township organization, through or near which the said road shall be located, are hereby authorized to raise money by a tax to be levied upon all the real and personal property in the said several counties, cities, villages, incorporated towns and townships, and to subscribe the same to the capital stock of said corporation hereby created, for the purpose of aiding in the construction and completion of said road. And the said several counties, cities, villages, incorporated towns and townships, as aforesaid, are further authorized to issue bonds drawing interest at the rate of ten per cent per annum; which said bonds shall be negotiable and payable in the city of New York in not less than one nor more than ten years after the date of the same: *Provided,* that no subscription shall be made, or no tax shall be levied, until the same shall be voted for as hereinafter provided.

"Sec. 9. Whenever twenty-five voters of any such county, city, village, town or township shall make a written application to the county clerk of such county, or twenty-five voters of any such city, incorporated village or town or township shall make such application to the clerk thereof requiring an election by the legal voters of such county, city, village or town or township to determine whether such subscription shall be made, and such tax levied, specifying in such application the amount, such clerk shall file such application in his office and immediately give the notice as required by law, for an election to be held by the legal voters of such county, city, village or town or township at the usual place of holding elections, such notice to be given at least thirty days prior to the day of holding such election; and

such election shall be held and conducted in all respects, and the returns thereof made, as in case of annual elections.

"Sec. 10.   If the majority of voters voting at such election shall be in favor of such subscription and tax for the payment thereof, then such county, city, incorporated village, or town or township, by its proper corporate authority, shall levy such tax and subscribe to such corporation the amount thereof, to be determined or voted for at any such election, and shall issue to said corporation their bonds, for such amount, drawing ten per cent interest per annum, and payable in not less than one nor more than ten years.   The said bonds, when issued, are to be irrevocable, and negotiable and payable as in section 8, as aforesaid.

"Sec. 11.   If any county, city, village or township shall subscribe to said capital stock, under the provisions of this Act, and shall issue their bonds, said bonds shall be in full payment of their subscriptions; and the supervisors of said townships, or county court of such county, and the corporate authority of such city, village or town, shall annually appoint some suitable person to represent and vote upon the stock so subscribed and levied as aforesaid.

"Sec. 19.   The several counties, cities, villages, incorporated towns, and the several towns or townships in counties having township .organization through or near which said railroad shall be located, are hereby empowered to make donations, and to issue bonds for the same in the manner hereinbefore provided to said railroad, for the construction and completion of the same."

The chief difficulty in this case has been encountered in our efforts to arrive at a satisfactory construction of these several sections of the company's charter.   It will be perceived that all these sections, except the 19th, have exclusive reference to subscriptions, yet as donations are required by the 19th section to be made in the same manner subscriptions are, it is important to ascertain the true construction of those sections which have exclusive reference to subscriptions.   Counsel

seem to substantially agree that the act contemplates two classes of subscriptions—one where the entire amount of the subscription is to be raised in money by immediate taxation, and to be paid in cash at the time the subscription is made; and the other where the payment is to be made in bonds.

While there are certain expressions to be found in some of the sections, particularly the 8th, which, if taken in a literal sense in the order in which they occur, would perhaps justify this conclusion, yet upon a careful consideration of all the provisions of the act bearing upon the question, we are unable to concur in the conclusion reached by counsel. We are inclined to the opinion that these sections of the charter having exclusive reference to subscriptions when considered as a whole, only contemplate and provide for subscriptions payable in the first instance in bonds, and to be ultimately discharged by the levy of a tax for that purpose. It is difficult to see how the 10th section can be reconciled with any other view. It declares in substance that if a majority of the voters voting at such election shall be in favor of such subscription and tax for the payment thereof, it shall be the duty of the corporation to levy the tax, make the subscription, and issue to the company bonds for the amount thereof.

The expression, " *such subscription and tax for the payment thereof,*" evidently refers to the same subscription and tax mentioned in the 8th and 9th sections, for it could refer to nothing else. And it must be conceded that the subscription thus referred to is, by the 10th section, made payable in bonds to be ultimately discharged by taxation.

The substance of these sections, stated in a few words, as we understand them, seems to be this: The 8th section is a simple grant of power to make subscriptions, issue bonds, and levy the requisite tax to pay them, upon a vote authorizing the same. The 9th section prescribes the manner of calling and holding the election. The 10th section requires the corporate authorities, upon an affirmative vote, to issue the bonds, make the subscription, and levy the necessary tax

to pay the same.   The 11th section declares that where a subscription has been made, the bonds delivered in pursuance thereof shall be deemed full payment for the purpose of giving the municipality the right to vote upon its stock às other stockholders.

In stating what we regard as the substance and effect of these sections of the charter, of course we do not pretend to give the language or follow the order of the various provisions contained in them.   But whether the construction we are inclined to give to these sections, with respect to whether one or two kinds of subscriptions are provided, we do not deem very material.

It is claimed by appellants that where it is proposed to subscribe to the capital stock of the company under the provisions of these sections, the application to the clerk to call an election must require a vote not only upon the question of subscription to the stock, but also upon the question of levying a tax to pay the same; that these are distinct, though dependent, propositions, and unless the application requires both to be submitted at the election, the clerk is not authorized to call one at all.

In like manner it is claimed that if it is desired to make a donation of bonds, the application must require an election called to determine both the question of donating the bonds, and also of levying a tax to pay them; otherwise the call of the election will be unwarranted, and the election itself, and all proceedings under it, void.

The legislature evidently did not, in either case, intend to subject the tax-payers of these municipalities to the burden which the levy and collection of the required tax would impose without their assent clearly expressed through an election properly called and held for that purpose.   Yet in determining whether this assent has been given in the case before us we must look to the substance rather than the form of the legislative provisions we have been considering, and the action which has been taken under them.   It is conceded that at the

election under which the bonds in question were issued, no formal proposition with reference to the levy of a tax for their payment was submitted or voted upon, nor was there anything in the application requiring it.   The application to the clerk required him "to call an election in said Township of Prairie to determine the wishes of the legal voters of the township in reference to said township's donating forty thousand dollars in its bonds to aid in the construction of the Bloomington and Ohio River Railroad."   An election was called in pursuance of the application, at which the above proposition was submitted and voted upon by the legal voters of the township —ninety votes being cast for donation, and none against it. The bonds were accordingly issued, and they are now outstanding in the hands of innocent holders, and it is objected they are void, for the reason no formal proposition authorizing the levy of a tax was submitted or voted upon at the same time the bonds themselves were voted.

Whatever may be the rule with respect to subscriptions, it is clear that so far as donations are concerned there is no express provision of the act that required the proposition in question to be submitted or voted upon.

The conclusion that the act required it is only reached by a process of reasoning or by a mere inference.   The act clearly empowered the township to make the donation of its bonds upon a vote authorizing it; and inasmuch as the same power which authorized the issuing and donation of these bonds also imposed the obligation of paying them, and this could only be done by the exercise of the taxing power, we are of opinion it is but just and reasonable to hold that the people of the township, by voting the donation of the bonds, impliedly voted for the levy of the requisite tax to pay them whenever it should be required for that purpose, and this, we think, was all the act required.

We do not understand that the act contemplates the immediate levy of a gross sum of money sufficient to pay the bonds; but, on the contrary, it was intended that a tax should be

levied from time to time to meet the interest and principal of the bonds as the same respectively matured.

It is also objected that the election was not conducted by the proper officials, and that the notice of the election is not sufficient; that the proofs show that there were but three notices posted up in the township, whereas the law required five; and also, at least one insertion of the notice in a news-paper published in the township. This objection is based upon the hypothesis that the election should have been conducted as if held at a special town meeting, and that the notice required by the 9th section of the company's charter is the same as that required for special town meetings. By the term "annual meetings," as there used, we do not understand the legislature meant town meetings; but are of opinion that it is used in the sense of "*general elections*," and was so intended, and if so, the notice under the general election law was sufficient, and so we regard it.

It is further objected that the proofs of the election, returns, etc., are insufficient; that they were only provable by record evidence, and that no such evidence was produced. We do not think this objection is well taken. The evidence respect-ing the calling and holding the election and the returns was competent, and satisfactorily shows that everything was done substantially as required by law.

It is further urged that the bonds were not executed by the "corporate authorities," as required by the act under which they were issued. While the expression, corporate authorities, does not ordinarily in its application to townships signify the supervisor and town clerk, yet we have no doubt of its being used in that sense in the act in question.

Upon the whole, we are of opinion that the bonds in ques-tion were properly issued, and that they are binding obliga-tions upon the township. It remains, therefore, only to inquire whether they were entitled to be registered under the act of the 16th of April, 1869. If so, the tax in question was properly levied by the auditor; otherwise, it was not,

and should have been enjoined. Before railroad aid bonds can be properly registered under the above act, it must appear that they were issued in pursuance of a vote of a majority of the legal voters living in the municipality issuing them. When once registered, the presumption is they were rightfully registered, and the burden of establishing the contrary rests upon the party affirming it.

It is well settled by the decisions of this court that where a majority of those voting at an election of the kind vote in favor of subscription or donation, as the case may be, for the purposes of registration it will be presumed that such majority so voting is a majority of all the legal voters living in the municipality at the time of the election ; and where, in such case, the authorities, acting upon such presumption, have admitted the bonds to registration, and the municipality issuing them has, as in this case, treated them as properly registered by paying previous taxes levied by the auditor for the liquidation of accruing interest, and the bonds thus registered have passed into the hands of innocent holders, nothing but the clearest and most satisfactory proof will authorize a court to enjoin the collection of a tax levied by the auditor on account of such bonds, on the alleged ground that the majority voting for such subscription or donation was not a majority of the legal voters.

In this case, as already observed, there were ninety votes cast in favor of donation, and none against it. With a view of overcoming the presumption that the electors casting these ninety votes were a majority of all the legal voters in the township at the time of the election, several witnesses were introduced on behalf of appellants, who testified that they had carefully gone over the poll books of the general election of 1868, in that township, and that it appeared from them that 193 votes were cast at that time, and that in the opinion of the witnesses the population of the township had been on the increase ever since. Moreover, that witnesses knew of a number of legal voters in the township at the time of the election

in 1868 who did not vote, which, if added to the number voting would make two hundred or over at that time; and in the opinion of witnesses there were fully two hundred legal voters in the township at the time of voting upon the question of donation on the 10th of December, 1869.

This is the substance of all the evidence bearing on the question; and it may all be true, and yet it falls far short of establishing the proposition for which it is offered. Unless the election at the time furnishes the test, how is it to be determined? Surely, the presumption arising from the vote actually cast can not be overcome by mere opinions of witnesses. Nor does it necessarily follow because there were two hundred voters in the township in 1868 there must therefore have been that number in it in 1869.

The rule laid down by this court in *Melvin et al.* v. *Lisenby et al.* 72 Ill. 63, is conclusive upon this question. In that case the register for the election at which the subscription was voted, contained 3267 names, which had been placed on the list as legal voters, and which was more than double the number of votes cast for subscription, nevertheless it was held, inasmuch as a majority of those voting at the election had voted in favor of subscription, the presumption arising therefrom could not be overcome by the registry list, and the registration of the bonds in that case was sustained. In this connection, see also *People ex rel.* v. *Warfield*, 20 Ill. 159.

It is also claimed that the bonds in question were never delivered to the Bloomington and Ohio River Railroad Company, but were delivered to the Chicago and Paducah Railroad Company. The facts are that these bonds, as voted, are payable to the former company. They were handed over by the agents of the township to P. B. Shumway, who, at the time, was secretary of the latter company. Shumway, in the receipt executed for them, professes to act on behalf of the Bloomington and Ohio River Railroad Company as well as his own company, and there is nothing in the record to show he was not authorized to do so. But even if it were admitted

there was an improper delivery of them, by means of which they passed into the hands of innocent holders, we are not prepared to hold that the bonds would be void in their hands. There was ample authority for issuing them; they were executed in the proper form, and made payable to the proper party, and there was nothing pertaining to them or could have been ascertained from the record that would have indicated they had been delivered to one not entitled to receive them, and certainly, under such circumstances, it would be great injustice to the present owners to hold them invalid.

Upon the whole we are of opinion that the decree of the circuit court is right, and it is therefore affirmed.

*Decree affirmed.*

SCOTT, J : I do not concur in this opinion.

Mr. Chief Justice DICKEY, dissenting :

I think a fair construction of sections 8, 9 and 10 leads to the conclusion that it is essential to the authority to issue bonds that the people should vote upon a proposition, not only to make the subscription or issue bonds, but to *levy a tax.* I think it essential to the power that the submission to the voters should, in some form, present *directly* to the voters the question as to *levying a tax.* It is said this was impliedly done by submitting the question of making the donation in bonds. This is not enough. It seems to me to over-ride and abolish a part of the statute or charter conferring the supposed power.

When stripped of words not affecting this question, the words of the charter are as follows :

" SEC. 8. The several townships are hereby authorized to raise money to be levied upon all the real and personal property in the said several * * * townships, and to subscribe the same to the stock of said corporation, for the purpose of aiding in the construction and completion of said road ; and the said several townships are further authorized

to issue bonds, &c.; *Provided,* that *no subscription* shall be made, or *no tax* shall be levied, until *the same* shall be *voted* for, *as hereinafter provided.*

"SEC. 9.   Whenever 25 voters of any such township shall make a written application to the clerk thereof, requiring an election to determine *whether such subscription* shall be made *and such tax* levied, *specifying in such application the amount,* such clerk shall file such application and give notice for an election to be held, etc.

"SEC. 10.   If the majority at such election shall be in favor of *such subscription* and *tax for the payment thereof,* then such township shall *levy such tax and subscribe* to such corporation the *amount thereof,* to be determined or *voted for* at any such election, and *shall* issue to said corporation bonds for such amount, payable not less than one year nor more than ten years.

"SEC. 19.   The several townships are empowered to make donations and -to issue bonds for the same, in the manner hereinbefore provided, to said railroad."

These enacting words contain *all* the legislative authority for the making the supposed bonds.  As to donations, we look first to section 19, which provides, that such townships "are empowered to make donations and to issue bonds for the same, to this railroad company, *in the manner hereinbefore provided.*"  We find nothing in the former part of the act in relation to donations; hence, strictly and literally, there is no power (which can lawfully be exercised) *expressly* given to make donations; for the words granting the power expressly limit its exercise to "the manner provided," and if no manner be provided the power can not be exercised. By necessary implication we construe these words to have reference to the manner of exercising like powers in the act in relation to subscription to the stock.  I therefore see no propriety in the suggestion that the limitations on the exercise of the power are less "express" as to donations than they are as to subscriptions.  The words of the statute give

no sanction to the suggestion, and it can not be supposed that the legislature intended that the safeguards against improvident donations should be less than those provided against the making of improvident subscriptions. I think donations and subscriptions are authorized to be made upon the same conditions, and these conditions are express as to both, otherwise no lawful donation can be made.

I agree with my brethren, that taking sections 8, 9 and 10 together, provide *only* for subscriptions payable in the first instance in bonds, and to be ultimately discharged by the levy of a tax for that purpose.

Keeping this thought in view, when we read again the statute to find the conditions on which the power is alone given, we find that the making the subscription and the imposing the tax are treated, all through the act, as two independent and distinct things. Power is given, upon certain conditions, in section 8, " to raise money to be levied " and " to subscribe the same." This indicates that the amount to be levied must be fixed before any subscription shall be made. The amount of the subscription is limited, in terms, in that section, to " the same,"—that is, to the amount " to be levied." In the limitation upon this power in the last clause of this same section 8, the making of the subscription and the levy of the tax are treated as different things. It is there said no subscription shall be made, or no tax shall be levied, until the same shall be voted for. Does not this expressly require a vote for the tax before it can be levied? But it is said, by voting to donate bonds the tax was impliedly voted for. This will not do; for the act says, " no tax shall be levied until *the same* shall be voted for, *as hereinafter provided.*" The language is not, until the same shall be voted for directly or " impliedly." We find nothing in the act suggesting an election or vote by implication. When we look into section 9, to learn what is the mode referred to and required by the words " as hereinafter provided," we find the application for the election must be for " an election

to determine whether such subscription shall be made and such tax levied"—specifying in such application the amount of the same. The words, "the same," here plainly relate to the tax to be levied, as much as to the subscription to be made. The question whether such subscription shall be made, and also the question whether such tax shall be levied, are both required to be submitted.

Again, section 10 requires that a majority shall be cast, at such election, "in favor of such subscription and tax for the payment thereof," before authority or power is given to levy such tax, subscribe the amount thereof and issue bonds for such amount.

Here are three things to be done—where the proper election has been held with favorable result—and they are stated in the order following : 1st, to "levy such tax ;" 2nd, to subscribe "the amount thereof" (that is the amount of the tax ;) and 3rd, to "issue bonds for such amount."

It will be observed the statute says nothing about a vote for or against issuing bonds. The authority is by an election to determine whether such subscription shall be made, and such tax levied, as may have been stated in the application of 25 voters, specifying the amount; and also it will be observed that the grant of general power in section 8, the mode of exercising which is provided in sections 9 and 10 is, 1st, to raise money by a levy of a tax, and then to subscribe the same. There might be a vote for taxation and no vote for subscription ; so there may be a vote for subscription and no vote for a tax. No authority is given to issue bonds without a vote for both. When the necessary vote for taxation and also for subscription have been had the law gives power to issue the bonds, but does not require a vote that bonds shall issue. We have no warrant for substituting a vote that bonds shall issue, in lieu of a vote that a specified amount of tax shall be levied.

It is clear to my mind that it was intended that no power to charge the town was to be exercised until the majority of

the voters had distinctly voted their willingness to be taxed the necessary amount. The provisions require, in my judgment, that the attention of the voters should be distinctly called to the fact that, if the vote was for the proceeding, a tax would be levied, and that the amount of the tax should be laid before them in the application for an election.

This is no idle provision of the statute. The language is express and plain, and, in my judgment, ought not to be disregarded. Men run in debt heedlessly and without carefully considering how soon they may be pressed for payment, and without considering well their probable means of payment. The law required that the amount of the tax necessary for this adventure should be specified, that the voter should have it in mind when he voted for subscription. This was not done; without it the whole proceeding was, in my judgment, *ultra vires.* This is a donation,—a thing for which the town gets nothing. These people never did vote to levy this tax. The holders of the bonds were bound to look to the power, and they knew the burden of proving the power rested on them.